42600.  DUDLEY v. SEARS, ROEBUCK & COMPANY.

Argued February 7, 1967—Decided March 14, 1967.

*George & George, William V. George,* for appellant.

*Nall, Miller, Cadenhead & Dennis, A. Paul Cadenhead, Gerald A. Friedlander,* for appellee.

Jordan, Judge.  This is a workmen's compensation claim by Mrs. Sarah N. Dudley against Sears, Roebuck & Company for an injury allegedly arising out of and in the course of employment on February 4, 1963. On a previous appeal this court reversed the judgment of Clayton Superior Court affirming an award adverse to the claimant, and directed the lower court to remand the case to the State Board of Workmen's Compensation for definite findings of fact as to each question presented in accordance with *Code* § 114-707. *Dudley v. Sears, Roebuck & Co.,* 111 Ga. App. 214 (141 SE2d 179). The present appeal is from a judgment of Clayton Superior Court of October 31, 1966, affirming the further action of the board on August 19, 1966, adverse to the claimant.

1.  The employer has moved to dismiss the appeal from the judgment of Clayton Superior Court because there is a pending action on certiorari in Fulton Superior Court seeking review of the same decision of the State Board of Workmen's Compensation. The claimant filed her appeal in Clayton Superior Court, the superior court of the county in which the injury occurred, on September 13, 1966, and, as shown by the motion, petitioned Fulton Superior Court for a writ of certiorari on September 19,

1966. In *Macon v. U. S. Fidelity &c. Co.*, 41 Ga. App. 774 (154 SE 702), it was held that the right to judicial review of an award of the Industrial Commission was restricted to the method prescribed by the Workmen's Compensation Act, and this court upheld the refusal of a superior court to sanction a writ of certiorari. The court has followed and applied this principle to dispose of appeals which were not directed "to the superior court of the county in which the injury occurred" as prescribed by *Code* § 114-710. *Porter v. Employers Liab. Ins. Co.*, 85 Ga. App. 497 (69 SE2d 384); *Gerrell v. Jackson*, 85 Ga. App. 707 (70 SE2d 105). Any doubt as to the jurisdiction of Clayton Superior Court to hear the appeal from the board's decision was resolved by this court in *Fidelity & Cas. Co. of N. Y. v. Whitehead*, 114 Ga. App. 630 (152 SE2d 706), decided October 20, 1966, rehearing denied November 16, 1966, certiorari denied by the Supreme Court January 6, 1967, wherein it was determined that *Code* § 114-710 continued in effect in the face of substituted provisions for appeal which were beyond the legislative power and were therefore ineffective. As the appeal from the judgment of Clayton Superior Court is before this court in accordance with present law (*Code* § 114-710; *Code Ann* §§ 6-701, 6-801 et seq.) this court and not Fulton Superior Court has jurisdiction of the case. The motion to dismiss is therefore without merit.

2. The board, upon reconsideration of the case, made the following determinations:

Findings of Fact.

"The claimant alleges that in the latter part of July 1962, while lifting packages in the place of her employment, she injured her back and she continued to work, although in pain, until February 1963. The Full Board finds as a matter of fact however that the claimant did not describe any accident but merely testified that her back started giving her trouble in the latter part of July 1962, and that she attributed it to the lifting of bundles or packages.

"Although the claimant testified that she specifically gave notice of an accident and injury on the job to her superiors the Board finds as a matter of fact that she merely complained of

her back hurting and, in fact, to a number of people alleged that her back difficulty stemmed from reasons other than employment.

"The Board further finds that apparently it was general knowledge around her place of employment that the claimant was plague[d] with back trouble.

"The Board therefore finds as a matter of fact that no notice of an accident or injury arising out of her employment was give[n] by the claimant to her employer within thirty days of its alleged occurrence.

"The Board further finds from the medical testimony that the claimant has had a vulnerable and unstable back since 1951 when she underwent surgery on her back.

"The Board further finds that the surgery of October 4, 1963, had no relationship to any accident or injury alleged to have occurred while in the employ of the defendant herein.

"The Board having found that no accident occurred, within the meaning of the Workmen's Compensation Act, and further, that if one had occurred, there was no notice of such accident and injury to the employer within the time prescribed by law nor was there any excuse offered for failure to give notice which would justify such failure.

"The burden of proof is upon the claimant to e[s]tablish her case in each and every detail. The claimant failed to do so by (1) failing to show an accident and injury arising out of and in the course of her employment, and (2) in the event there was an accident and injury, by giving proper notice to the employer. The claimant, having failed to establish her case in these two essential points, must be denied compensation."

The claimant contends in her first enumerated error that none of the facts as found by the board, either as to the nature of the accident or the failure to give notice, support the denial of compensation. In her second enumerated error she contends that the findings that the claimant did not describe any accident, that the ruptured disc (i.e., one of the reasons for surgery in October, 1963) had no relationship to any accident or injury allegedly incurred as an employee, and that there was no notice and no excuse for failing to notify her employer, are contrary

to the evidence, as well as the failure to make any finding of whether a pre-existing condition had been aggravated. In her fourth enumerated error she contends further that the board predicated its findings on an erroneous legal theory in basing denial partially on a pre-existing condition without considering whether lifting at work aggravated the condition.

The evidence shows that the claimant has a long history of difficulties with her back, at least as far back as 1948 when she fell from a window and hurt her back. Surgery in 1951 resulted in a satisfactory immobile fusion of the lumbosacral joint, and from then until her employment by Sears in 1962 her condition appears to have been asymptomatic for the most part, although employment records of another employer disclose she was wearing a back brace when she was rehired on July 18, 1960, and a witness recalled she had worn a brace when previously employed. The claimant recalled wearing a brace in 1951 or 1952, but was positive she did not wear one when rehired by this employer in 1960, although she did admit wearing a brace in 1960 following removal of a tumor unrelated to her back condition. In her application for employment at Sears in 1962 she omitted answers to questions about serious illnesses, operations, and back injury, but she stated that she did not know why she omitted this information and that she did not omit any answers deliberately. The doctor who examined her on June 26, 1962, questioned her about her medical history, but he received no information which would lead him to suspect any back injury and he did not examine her lower back. He furnished a negative report to Sears as to any abnormal back condition.

The claimant testified that in the latter part of July, 1962, while working for Sears her back hurt when she would pick up packages. This pain became more severe in August, and with the permission of Miss Rachel Canine, who was the senior employee under the manager, she visited a doctor whose office was near the Sears store. The doctor diagnosed the pain as due to muscle spasm, gave her a "shot" and tablets, and she continued to work. When the pain became more severe she discussed her condition with Miss Canine who at various times let her work in the "phone room" rather than lifting. Miss Canine sug-

gested a type of girdle and a type of shoes with rubber soles, and she tried these. It was not until December that the claimant discussed her condition with Mr. Rick, the manager. Several times he and some of the girls helped her with the heaviest packages. On February 4, 1963, her back hurt so severely she could not stand without help and she went home, after telling the manager she was unable to work on account of her back hurting.

Mr. Rick recalled noticing the claimant in December "walking a little bit funny" and stating that her back was bothering her, but on no occasion, including the day she finally left, did she ever indicate to him that she may have hurt herself by lifting packages. The claimant, however, says she "told them lifting heavy packages caused it." After a period of treatment, including hospitalization, she discussed returning to work with duties not involving lifting, but upon examination on behalf of Sears she was discharged on March 11, 1963, as being unable to meet the physical requirements for employment. According to Mr. Rick, the first time he knew that the claimant attributed her back condition to her employment with Sears was when he received a card notifying him of the claim filed on March 19, 1963, with the State Board of Workmen's Compensation.

In April 1963, according to medical testimony, the claimant was examined on account of back pain, and her symptoms indicated an unstable joint condition just above the level of the previous fusion. The symptoms diminished, but in the early part of September she began having pain in the left leg, and by the middle of September the pain was acute. The medical expert attributed this change to a sudden breakdown of the spinal disc which he considered a complication of her chronic joint disability. In October of 1963 the disc was removed from the joint above the joint previously fused, and the fusion was extended to this joint. The medical expert, who had participated in her treatment in 1951 and again in 1963, compared and explained what he thought had occurred on both occasions. She had an unstable condition at her lumbosacral joint before 1951 which caused back pain and eventually the disc gave away completely, producing an acutely painful condition. This was

corrected by the removal of the disc and the spinal fusion in 1951, which in effect created a new lumbosacral joint just above the fusion. As the lowest mobile joint is always potentially a strain point the new lumbosacral joint eventually began to give trouble, manifested by symptoms of back pain. This continued until the symptoms of leg pain in September of 1963, indicating a herniated disc. As far as the herniated disc was concerned he was of the definite opinion that this occurred about September 1963, but as to her back trouble he could not be sure, and could not state positively whether it began as a result of her employment with Sears or when it began. He suggested that it could have existed for three months, three years, or eight or nine years, and that what he knew was based on the history of the matter as furnished to him by the claimant, who told him she had no difficulty from 1951 until 1962. He also pointed out that there is no correlation from patient to patient as to when symptoms of an unstable joint occur and the later development of a herniated disc, that it may be three months in one patient, three years in another, and ten or fifteen years in still another.

This court has no authority to disturb the findings of fact by the board if they are supported by any evidence, and to sustain her claim it was incumbent upon the claimant to convince the board that her condition arose out of and in the course of her employment. This was an open question under the evidence. Under one view she was free of any condition when she went to work for Sears, and the lifting of packages at work, as shown by the pain she experienced, could have caused her condition. Under another view, she had an unstable back condition which was aggravated by lifting packages while at work. Under still another view she had an unstable back condition which had been gradually deteriorating over a period of years, and the pain from lifting while at work was only a symptomatic manifestation of this condition, but did not cause or aggravate the condition. Under these circumstances it was clearly within the authority of the board to determine that the claimant had failed to describe and prove a work-connected accident. Such a determination would necessarily include a determination that her work neither produced nor aggravated her condition. This is further borne

out by the board's determination from the medical testimony that the unstable back condition had existed since 1951, and while it may have been desirable for the board to express in clear and unequivocal terms that the condition was not aggravated while at work, such a specific finding was not mandatory if the finding was implicit in another finding. The further determination of the board of no relationship between the remedial surgery in 1963 necessarily follows from the determination that the claimant did not describe a work-connected accident. This is the first reason given by the board for its finding in this respect, as disclosed by the statement immediately following the finding of no relationship. Although the claimant did inform fellow employees, including the manager, of her pain, the testimony of Mr. Rick and Miss Canine indicates that the information was understood to show her physical limitations, which made it impossible for her to lift packages without back pain, and not because the condition was caused by lifting at work. Under this evidence the board was authorized to determine that the employee had failed to inform her employer of a work-connected injury. There is no merit in the first, second, and fourth enumerated errors.

3. The claimant further contends, in the remaining three enumerated errors, that the award is contrary to law based on erroneous legal theories to the effect that a gradual injury is not an accident, that formal notice must be given even when the employer has notice, and that notice must be given within thirty days after the first symptom even though disability does not exist at the time. The record fails to support these contentions.

4. The award of the State Board of Workmen's Compensation denying compensation being authorized by the evidence, and no error of law appearing, the judge of the superior court did not err in affirming the award on appeal.

*Judgment affirmed. Bell, P. J., and Pannell, J., concur.*